## COMMERCIAL CASUALTY INSURANCE CO. v. CHAMPLIN REFINING CO.

No. 23316. Dec. 27, 1934.

Rehearing Denied Jan. 22, 1935.

Hal Crouch and Philip N. Landa, for plaintiff in error.

McKeever, Elam, Stewart & McKeever, for defendant in error.

OSBORN, J. The Champlin Refining Company, as plaintiff, recovered a judgment in the district court of Garfield county against the defendant, Commercial Casualty Insurance Company, as surety, on a bond indemnifying plaintiff from any loss that might arise through the embezzlement or larceny of money or goods by one Arthur I. Quinby, an employee of plaintiff. The parties will be hereinafter referred to as they appeared in the trial court.

On appeal there is but one issue presented for determination. Defendant contends that plaintiff did not comply with condition No. 4 of the bond, which is as follows:

"That in the event of any claim being made hereunder, the employer shall, at the request of the surety, immediately lay information before the proper authorities for the arrest of such employee and lend every assistance (except pecuniary) which the surety may require in the apprehension and prosecution of said employee, and give every assistance which the employer may be able to render in any civil action which the surety may bring against the employee on account of said claim, whether the action is brought by the surety previous or subsequent to its paying such claim."

No evidence was introduced. The cause was tried on a stipulation of facts, the material portion thereof being as follows:

"1. That on March 23, 1927, defendant executed the fidelity bond described in plaintiff's petition, and that the same was in force and effect upon the dates therein alleged.

"2. That plaintiff suffered a loss under the terms of said bond in the sum of $717.-60, as alleged in said petition.

"3. That thereafter, on July 26, 1927; January 22, 1928; March 5, 1929, and June 10, 1927, defendant made written demand to induce plaintiff to institute criminal proceedings against said principal, Arthur I. Quinby, and that plaintiff laid the facts before the proper county attorney, who refused to cause a warrant to issue unless plaintiff or one of its agents would sign an information, and that plaintiff refused to sign an information."

A jury was waived and the cause tried to the court. It is shown that the embezzlement occurred at Sun City, Kan., and the applicable Kansas statute is paragraph 2, art. 8, chap. 62, Revised Statutes of Kansas, which provides:

"Informations may be filed during term

time or in vacation in any court having jurisdiction of the offense specified therein, by the prosecuting attorney of the proper county as informant. * * * All informations shall be verified by the oath of the prosecuting attorney, complainant or some other person."

It is noted that under the express provisions of the statute, it is not required that the information be signed by the complaining witness; nor under the express provisions of the bond is there a requirement that a complaint or information shall be verified by the assured. By the terms of the above condition of the bond, defendant is only required to "immediately lay information before the proper authorities for the arrest of such employee and lend every assistance which the surety may require in the apprehension and prosecution of said employee."

By the provisions of section 10613, O. S. 1931, a compensated corporate surety cannot invoke the rule of strictissimi juris. Metropolitan Casualty Ins. Co. v. United Brick & Tile Co., 167 Okla. 402, 29 P. (2d) 771. The contract of guaranty should be liberally construed.

There is no requirement that plaintiff should sign an information or complaint against the employee. There is no showing that plaintiff has failed to lend assistance to the surety in the apprehension and prosecution of the employee.

The position of the defendant is purely technical, and plaintiff has substantially complied with the necessary requirements fixed by the terms of the bond.

The judgment of the trial court is affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, BAYLESS, and BUSBY, JJ., concur. McNEILL, J., dissents. ANDREWS and WELCH, JJ., absent.

McNEILL, J. (dissenting). I am unable to concur in the majority opinion. This appeal relates to a judgment rendered by the district court of Garfield county in an action on a larceny and embezzlement bond given by the Commercial Casualty Insurance Company, a corporation, to the Champlin Refining Company, a corporation, guaranteeing said refining company against loss sustained by reason of any act of larceny or embezzlement on the part of any of its employees.

The refining company obtained a judgment against the surety company, and the surety company seeks to reverse the same.

The facts are not in dispute, and the matters presented for determination are confined to the single proposition of whether the plaintiff, Champlin Refining Company, failed to comply with certain provisions of said bond as a condition precedent to its right to recover. The questionable portion of the bond contains the following provisions:

"4th. That in the event of any claim being made hereunder, the employer shall, at the request of the * * * immediately lay information before the proper authorities for the arrest of such employee, and lend every * * * (except pecuniary) which the surety may require in the apprehension and prosecution of said employee * * * every assistance which the employer may be able to render in any civil action which the surety may * * * the employee on account of said claim, whether the action is brought by the surety previous or subsequent * * * such claim."

The insurance company contends that, when the plaintiff refused to sign an information leading to the arrest and prosecution of the defaulting employee, whose acts of embezzlement were admitted by the insurance company, said plaintiff, by reason thereof, failed to comply with the aforesaid quoted provisions of said bond; that such provisions of the bond constituted a condition precedent, and that the refusal of the plaintiff to sign said complaint bars the plaintiff from recovery.

On the other hand, the plaintiff urges that, when it laid the facts before the proper officer, the county attorney, who refused to cause a warrant to issue for the arrest of said employee unless the plaintiff or one of its agents would sign the information, it did comply with the real intent and contract between the plaintiff and said surety company; and the surety company in singling out the above provisions of the bond seeks to apply a strict construction of those provisions to avoid liability.

The surety company is a surety for hire, and the above stipulation in the bond must be reasonably and liberally construed with the bond as a whole and in its entirety, in accordance with the general rule of law applicable to policies of insurance so that the construction placed upon the contract is favorable to the obligee in the event there is vagueness and ambiguity in the contract. Section 5447, C. O. S. 1921, section 10613, O. S. 1931; Maryland Casualty Co. et al. v. Town of Wellston, 47 Okla. 417, 148 P. 691;

Southwestern Surety Ins. Co. v. Davis et al., 53 Okla. 332, 156 P. 213; Southwestern Surety Ins. Co. v. Board of Commissioners of Coal County, 77 Okla. 137, 187 P. 467; Columbia Bank & Trust Co. v. United States Fidelity & Guaranty Co., 33 Okla. 535, 126 P. 556; Henderson v. Ponca City Milling Co., 116 Okla. 169, 243 P. 743; United States Fidelity & Guaranty Co. v. Gray, 106 Okla. 222, 233 P. 731. It is my opinion that the provisions in question, when considered in the light of the terms of the bond as a whole, are not susceptible of a vague, ambiguous, or unreasonable interpretation.

The root of the contract was to insure the plaintiff against any loss which the plaintiff might sustain by virtue of any act of larceny or embezzlement on the part of its employees. There are contained in the contract other stipulations which are expressly declared to be conditions precedent to any recovery in addition to the foregoing quoted provisions. Those conditions deal with retaining any employee known to be dishonest; notification to the surety of any dishonesty of any employee; the forwarding of itemized statement of loss; and the production of books, vouchers, and evidence required by the surety company.

It is not contended that the plaintiff, upon discovering the dishonesty of its employee, did not notify the surety company of such defalcation and did not stand ready and willing at all times to do everything within its power to produce everything within its possession or knowledge at the request of the surety company, including the presentation of all facts before the proper authorities, civil or criminal, in order that the surety company might pursue any course it desired against the defaulter.

Counsel for defendant rely upon the case of Maryland Casualty Co. v. Laurel Oil & Fertilizer Co., 116 Miss. 283, 76 So. 875, in support of its contentions. Counsel for plaintiff state in their brief that this case is cited from 25 C. J. 1103, section 14, and "appears to be about all the available law there is on this particular sort of a proposition."

In the case of Maryland Casualty Co. et al., supra, the Supreme Court of Mississippi considered an indemnity bond against any act constituting larceny or the embezzlement by an employee for which the insurance company as surety had provided, as shown by the opinion, as follows:

"* * * That 'the employer shall, if so required by the company, and at the cost and expense of the company, use all diligence in prosecuting any employee guilty of an act entailing liability upon the company, under this bond, civilly or criminally, as may be allowed under the existing laws, and give all information at its disposal and all the assistance in its power to bring the employee to justice, and to aid the company in any suit brought by the company to obtain reimbursement from the employee, or his estate, or any one else in the premises for moneys which the company may have paid or become liable to pay by virtue of this bond.' * * *"

In that case the court said:

"We think it was error to sustain the demurrer to the plea of defendant that the Oil & Fertilizer Company refused to file an information and prosecute Cook, though requested in writing by the Casualty Company to do so. It is not contrary to the public policy of this state for a citizen to make an affidavit charging another citizen with crime who is guilty thereof. It is rather the public policy of this state to have crime prosecuted, and each citizen of the state has a right to make an affidavit of any offense against the public law coming to his knowledge. It certainly is not contrary to public policy to prosecute criminals, and it is a reasonable contract where one party is insuring against acts constituting larceny or embezzlement to stipulate that the assured shall give information and institute prosecutions, where required to do so, of all offenses on the party of the employee insured against."

In view of the statement of counsel for defendant as to the dearth of authority on questions herein involved, I have made an independent investigation. In the case of Directors & Co. of the London Guarantie Co. v. Benjamin Lister Fearnley, 5 Appeal Cases (Law Reports) (1880) page 911, the House of Lords considered an action brought to recover the sum of one thousand pounds upon a guaranty policy given by the Surety Company dated March 8, 1875, by which the employer was to be indemnified against any fraud or dishonesty which should amount to embezzlement of money which should be committed by one about to be employed by said employer. That policy contained the following provisions:

"Provided that the employer shall, if and when required by the company (but at the expense of the company, if a conviction be obtained), use all diligence in prosecuting the employed to conviction for any fraud or dishonesty (as aforesaid) which he shall have committed, and in consequence of which a claim shall have been made under the policy; and shall, at the company's expense, give all information and assistance, to enable the company to sue for and obtain the reimbursement by the employed or by his

estate, of any moneys which the company shall have become liable to pay."

It was declared in the contract in that case that this provision should be a condition precedent to the right on the part of said employer to recover on its policy. There were several defenses pleaded by the insurance company, but the seventh plea was the material one considered. That plea was as follows:

"That though the plaintiff was required so to do by the defendants, yet he did not use diligence in prosecuting the said Frederick Marshall for the said fraud or dishonesty, which the plaintiff alleges he the said Frederick Marshall was so guilty of, as in the plaint stated, nor had the said plaintiff the said Frederick Marshall brought to trial."

The employer being the plaintiff, demurred to these defenses, on the ground that it did not—

"Disclose any grounds of defense good in substance, and therefore the plaintiff demurs in law to the said defense, because it is not alleged therein, nor does it appear therefrom that there was any obligation on the plaintiff to prosecute the said Frederick Marshall and bring him to trial for embezzlement, or that the nonperformance of any such obligation was a condition precedent to the plaintiff's right of action."

The Court of Exchequer in Ireland, being the court below, allowed the demurrer. On appeal to the Court of Appeal in Ireland, it appears that the judges were equally divided and the judgment in the court below stood affirmed. The appeal was then brought to the House of Lords. It was then held that the judgment of the court below should be reversed and that the proviso relating to prosecuting the employee to conviction for the fraud or dishonesty constituted a condition precedent and operated as a defense to the action. In that case, Lord Watson of the House of Lords, in speaking in reference to the condition precedent to the right of the employer to recover when the contract of insurance required that the employer should use all diligence in prosecuting the employed to conviction, said:

"When the parties to a contract of insurance choose in express terms to declare that a certain condition of the policy shall be a condition precedent, that stipulation ought, in my opinion, to receive effect, unless it shall appear either to be so capricious and unreasonable that a court of law ought not to enforce it, or to

be sua natura incapable of being made a condition precedent.

"In the present case I am of opinion that, having regard to the character of the risk insured against, it would not be an unreasonable thing for the company to stipulate that, before admitting or being subjected to liability for the sum insured, the employers should, as a condition precedent to their right of recovery, use, if and when required, all possible diligence to prosecute the fraudulent person to conviction."

In the case of Worsley v. Wood, 6 Term Reports, in the Court of the King's Bench, 710, English Reports, Full Reprint, vol. 101, p. 785, June 7, 1796, a policy of insurance was considered which contained certain printed proposals wherein it was stipulated as follows:

"* * * Persons insured shall give notice of the loss forthwith, deliver in an account, and procure a certificate of the minister, church wardens and some reputable householders of the parish, importing that they knew the character, etc., of the assured, and believe that he really sustained the loss and without fraud."

In that case it was held that the procuring of such a certificate was a condition precedent to the right of the assured to recover, and that it was immaterial that the minister, etc., wrongfully refused to sign the certificate. In that case Lord Kenyon, Chief Justice, said:

"We are called upon in this action to give effect to a contract made between these parties; and if from the terms of it we discover that they intended that the procuring of the certificate by the assured should precede their right to recover, and that it has not been procured, we are bound to give judgment in favor of the defendant below. These insurance companies, who enter into very extensive contracts of this kind, are liable (as we but too frequently see in courts of justice) to great fraud and impositions; common prudence therefore suggests to them the propriety of taking all possible care to protect them from frauds when they make these contracts. The Phoenix Company has provided, among other things, that the assured should as soon as possible after the calamity has happened deliver in an account of their loss and procure a certificate under the hands of the minister and church wardens and of some reputable householders of the parish, importing that they knew the character and circumstances of the assured, and believed that they had sustained the loss without any kind of fraud. That this is a prudent regulation this very

case is sufficient to convince us; for it appears on the record that soon after the fire the assured delivered in an account of their loss which they said amounted to 70001., that they obtained a certificate from some of the reputable inhabitants that the loss did amount to that sum, and that the jury after inquiring into all the circumstances were of opinion that the loss did not exceed 30001., and yet it also stated that the minister and church wardens, who refused to certify that they believed that the loss amounted to 70001., wrongfully and without any reasonable or probable cause refused to sign such certificate. * * *

"But the assured cannot substitute one thing for another. * * *"

In that case Judge Ashhurst also said:

"It is perfectly immaterial whether they have entered into an improvident contract; if they choose to take the burden upon themselves, they cannot call on the insurance office until they have complied with the condition."

When such express terms as those involved in the case at bar have been declared conditions precedent in the policy, they ought to receive force and effect. There is nothing misleading in the stipulation No. 4, above quoted, and particularly in the language, to-wit, "which the surety may require in the apprehension and prosecution of said employee." In this case the surety company re-quoted, and particularly in the language, to the employee on the part of the employer. The language set forth in the provision, in my opinion, is sufficiently plain and clear to include the filing of an information for the prosecution of the defaulting employee. The apprehension and prosecution of an employee unquestionably can mean nothing else than the institution or commencement and continuance of criminal proceedings under the Code of Criminal Procedure by due course of law before a competent tribunal for the purpose of bringing the offender to justice and punishment. 50 C. J. page 795. Such a proceeding includes the signing of an information charging the commission of a public offense, as provided by paragraph 2, art. 8, chap. 62, Revised Statutes of Kansas, quoted in the majority opinion.

In Kemper v. State, 63 Tex. Cr. 1, 138 S. W. 1025, it is said:

" 'Criminal prosecution' has been held to mean: 'The mode of the formal accusation of offenders.' Burnap v. Marsh, 13 Ill. 535; Donnelly v. People, 11 Ill. 552, 52 Am. Dec. 459. 'The means adopted to bring a supposed offender to justice and punishment by due course of law.' State v. Bowles, 70 Kan. 821, 79 P. 726, 69 L. R. A. 176; Schulte

v. Keokuk County, 74 Iowa, 292, 37 N. W. 376; Sigsby v. State, 43 Fla. 524, 30 South. 816.' 'A criminal proceeding at the suit of the government.' Ex parte Fagg, 38 Tex. Cr. R. 573, 44 S. W. 294, 40 L. R. A. 212. 'The whole or any part of the procedure which the law provides for bringing the offenders to justice; a criminal action; a proceeding constituted to carry on by due course of law before a competent tribunal, for the purpose of determining the guilt or innocence of a person charged with crime.' Black's Law Dictionary, quoted in State v. Rozum, 8 N. D. 548, 80 N. W. 477. 'The process of exhibiting formal charges against an offender before a legal tribunal, and pursuing them to final judgment on behalf of the state or government, as by indictment or information.' State v. Bowles, 70 Kan. 821, 79 P. 726, 69 L. R. A. 176; Burrill's Law Dictionary, quoted in Ryan v. People, 62 Ill. App. 355; Schulte v. Keokuk County, 74 Iowa, 292, 37 N. W. 376; Webster's Dictionary quoted in Territory v. Nelson, 2 Wyo. 346 to 352."

In the case of State ex rel. Miller v. District Court of Burleigh County et al., 124 N. W. 417, the Supreme Court of North Dakota said:

"To 'prosecute' is to proceed against judicially. A 'prosecution' is the act of conducting or waging a proceeding in court; the means adopted to bring a supposed offender to justice and punishment by due course of law. It is also defined as the institution or commencement and continuance of a criminal suit; the process of exhibiting formal charges against an offender before a legal tribunal, and pursuing them to final judgment on behalf of the state or government, as by indictment."

In People v. Ellis, 204 Mich. 157, 169 N. W. 930, it is said:

"A prosecution is a definite thing. A prosecution is generally understood to be a criminal action; a proceeding instituted and carried on by due course of law before a competent tribunal for the purpose of determining the guilt or innocence of the person charged with some crime or offense. Black's Law Dictionary (2d Ed.)."

In State v. Mayhew et al., 155 N. C. 477, 71 S. E. 447, it is said:

" 'Prosecution is the whole or any part of the procedure which the law provides for bringing offenders to justice.' Words and Phrases, vol. 6, p. 5737, citing Ex parte Fagg, 38 Tex. Cr. R. 573, 44 S. W. 294, 40 L. R. A. 212."

In Ex parte Fagg, 38 Tex. Cr. 573, 44 S. W. 294, 40 L. R. A. 212, the Court of Criminal Appeals said:

"A 'prosecution' is defined by our statute to be 'the whole or any part of the proced-

ure which the law provides for bringing offenders to justice.' See article 26 of the Penal Code of 1895. 'It is a criminal proceeding at the suit of the government.' Tennessee v. Davis, 100 U. S. 269. A proceeding by a municipal corporation to enforce such fines and penalties as are ordinarily and by usage enforced by them is not criminal in its nature, whatever may be the form of the procedure. Such proceedings are only quasi criminal, and are not prosecutions."

The questioned provision in the instant case, by reason of the county attorney refusing to sign the information, was a material part of the contract which the plaintiff, as employer, agreed to perform for the protection of the surety company. The surety company did not waive this provision of the bond, but, on the contrary, sought the enforcement of this provision. The refining company assumed this burden of rendering every assistance which the employer might be able to render in a civil action which the surety might require and to lend every assistance which the surety might require in the apprehension and prosecution of any employee, and before said employer could call upon the surety company to pay in accordance with the terms of said bond, it was incumbent upon the refining company to comply, when requested so to do, with the provisions of the bond which we have been considering and which were agreed by the provisions of said bond to be a condition precedent to the right of recovery. Under such circumstances it became material for the refining company, when required by the surety company, to sign the information charging the defaulting employee with the embezzlement, which had been admitted, and it was not competent for the refining company to substitute other terms for the questioned provisions in the bond which were a material part of the contract entered into by the parties for the purpose of protecting the insurance company from fraud and assuming other consequences which might flow or result from the unsuccessful prosecution of such defaulting employee.

I conclude that the plaintiff was required under the bond in question to officially set in motion criminal proceedings by signing a verified information against the defaulting employee, when requested to do so by the county attorney and upon demand by the surety company, and that, when plaintiff refused to do so, it did not fully implement its obligations under said bond by merely presenting the facts to the county attorney. This refusal to sign the criminal information incident to said criminal proceedings when required to do so by the surety com-

pany left the condition precedent unfulfilled. It is my view that there is no ambiguity in this bond such as to invoke the rule of strictissimi juris. For these reasons, I dissent.